

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | | |
|---|---|---|
| **CHRIS HAMBRIC, as administrator and legal representative of the Estate of GREGORY HAMBRIC,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **6:23-cv-00748-LSC** |
| **v.** | ) ) | |
| **KOLBY TWILLEY and NICK SMITH,** | ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF OPINION

Plaintiff Chris Hambric ("Plaintiff") brings this suit against Sheriff Nick Smith and Deputy Sheriff Kolby Twilley, alleging violations of 42 U.S.C. § 1983 and Alabama state law related to the death of Gregory Hambric ("Hambric"). Before the Court are Defendants' motions to dismiss, which raise qualified immunity and absolute state sovereign immunity defenses. (Docs. 3, 5.) The issues have been fully briefed and are ripe for review. For the reasons stated below, Sheriff Smith's motion to dismiss[1] (doc. 3) is due to be **GRANTED** and Deputy Twilley's motion to dismiss (doc. 5) is due to be **GRANTED**.

---

[1]     Sheriff Smith filed a motion to dismiss all claims against him. Since then, this Court granted Plaintiff leave to file his proposed First Amended Complaint, which asserts a new Count against

## I.   Background[2]

This suit arises from a fatal shooting involving Deputy Twilley and Hambric that occurred in Walker County, Alabama. According to the complaint, Hambric, who has a history of mental illness, was at home with his wife on the day of the incident when he began behaving erratically. (Doc. 19 ¶¶ 11–14.) His wife called the police and Deputy Twilley responded. (*Id.* ¶¶ 15–16.) Upon arrival, Deputy Twilley exited his vehicle and allegedly engaged Hambric in a heated verbal exchange lasting from one to five minutes. (*Id.* ¶¶ 25, 27.) During this exchange, both men maintained a constant distance from each other of between five and twenty yards. (*Id.* ¶¶ 26, 29.) Eventually, Hambric said something to the effect of "Give me all you've got," and turned his back to Deputy Twilley. (*Id.* ¶ 30.) Deputy Twilley then allegedly fired approximately 19 rounds at Hambric, who was unarmed, striking him several times and firing until he died. (*Id.* ¶¶ 21, 31–32.)

---

Sheriff Smith for allegedly failing to train Deputy Twilley on the use of deadly force. (*See* doc. 15-1.) In the Order granting Plaintiff leave to file the amended complaint, this Court instructed the Parties that it would treat Defendants' pending motions to dismiss and accompanying briefs as reasserted against Plaintiff's First Amended Complaint. This Court further instructed Sheriff Smith that, if he wished to supplement his motion to assert a defense as to the new claim brought against him, he must do so within ten (10) days of the entry of that Order. (Doc. 18.) Ten days have passed without Sheriff Smith having supplemented his motion. Accordingly, this Opinion does not address the new claim asserted against Sheriff Smith.

[2]      At the motion to dismiss stage, the Court must accept the plaintiff's version of the facts as true, and "[construe] the reasonable inferences therefrom . . . in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). The following facts are, therefore, taken from Plaintiff's allegations in his complaint, and the Court makes no ruling on their veracity.

Plaintiff also claims that the Walker County Sheriff's Office mistreats mentally ill persons. He alleges three incidents of such mistreatment: two involving inadequate provision of medical care to inmates of the Walker County Jail and one involving an officer shooting. (*Id.* ¶¶ 35–39.) Plaintiff claims that these incidents put Sheriff Smith, as the supervisor of deputy sheriffs, on notice that his deputies tend to use excessive force and mistreat mentally ill persons. (*Id.* ¶¶ 42, 61.) Nevertheless, Sheriff Smith allegedly refuses to discipline his deputies for misconduct or train them in how to deal with mentally ill persons. (*Id.*)

## II.    Standard of Review

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the

speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

### III.   ANALYSIS

Plaintiff asserts claims against each Defendant, in his individual capacity, for wrongful death under Alabama law and for constitutional violations under 42 U.S.C.

§ 1983. (Docs. 12 at 1; 19 at 7–11.) Raising immunity defenses, Sheriff Smith moves to dismiss the state law claim and one of two § 1983 claims asserted against him; Deputy Twilley moves to dismiss only the state law claim. For the reasons discussed below, Defendants' motions are due to be **GRANTED**.

### A. State immunity shields both Sheriff Smith and Deputy Twilley from Plaintiff's state law claims (Counts II and IV).

Plaintiff asserts a claim against each Defendant under Alabama's wrongful death statute, Alabama Code § 6-5-410. As Defendants argue, they are entitled to absolute state immunity from these claims.

The Alabama Constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const., § 14. Alabama courts have described this provision as "a nearly impregnable and almost invincible wall that provides the State an unwaivable, absolute immunity from suit in any court." *Ex parte Donaldson*, 80 So. 3d 895, 897 (Ala. 2011) (cleaned up) (quoting *Ex parte Town of Lowndesboro*, 950 So. 2d 1203, 1206 (Ala. 2006)). As constitutional executive officers, Alabama "sheriffs enjoy State immunity under § 14 from actions against them in their individual capacities for acts they performed in the line and scope of their employment." *Id.* (quoting *Suttles v. Roy*, 75 So. 3d 90, 94 (Ala. 2010)). And "deputy sheriffs are immune from suit to the same extent as sheriffs." *Id.* at 898 (quoting *Carr v. City of Florence, Alabama*, 916 F.2d 1521, 1526 (11th Cir. 1990)).

Under Alabama law, acts are performed in the line and scope of employment if the acts are "so closely connected with what [Defendants] are employed to do and so fairly and reasonably incidental to it, that they may be regarded as methods, *even though quite improper ones*, of carrying out the objectives of the employment." *Shrader v. Emps. Mut. Cas. Co.*, 907 So. 2d 1026, 1034 (Ala. 2005) (emphasis in original) (quoting *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d 1190, 1194 (Ala. 1998)).

Here, Plaintiff does not explicitly allege whether Defendants' acts were performed in the line and scope of their employment. (*But see* doc. 18 ¶ 46 ("Smith does not train or cause others to train deputies *in his employment*….") (emphasis added).) Nevertheless, the relevant allegations describe acts that are plainly incidental to Defendants' employment. *See Shrader*, 907 So. 2d at 1033–34. Plaintiff does not contest this point. Immediately after alleging Defendants' employment with the sheriff's office, Plaintiff alleges that they "acted under color of state law" at all relevant times to this action. (Doc. 18 ¶¶ 17–18, 33–34.) *See Shrader*, 907 So. 2d at 1034 (finding that the concepts of "color of law" and "scope of employment" "overlap in significant measure" (emphasis omitted)). Moreover, the allegations describe Deputy Twilley's actions "in response to the 911 call," and Sheriff Smith's actions as "the chief policymaker with respect to all deputies." (Doc. 18 ¶¶ 16, 61.) These allegations clearly relate to actions taken within the line and scope of

Defendants' employment when they performed the acts relevant to Plaintiff's claims. *Cf. Rotton v. Slay*, No. 2:10-CV-22-MEF, 2010 WL 5343195, at *4 (M.D. Ala. Dec. 22, 2010) (concluding that deputy sheriff was entitled to state immunity against state law excessive force claim where the plaintiff did "not allege any facts under which the Court could find that [the deputy] was acting outside the scope of his employment"). Accordingly, Defendants are entitled to absolute state immunity from Plaintiff's state law claims. *Donaldson*, 80 So. 3d at 897.

While recognizing the strength of the foregoing authority, Plaintiff argues against the application of absolute state immunity on two grounds.

First, Plaintiff argues in good faith that the law should be changed. As a federal district court, however, it is this Court's role to interpret and apply Alabama law, not to change it. *See Union Planters Bank, N.A. v. New York*, 436 F.3d 1305, 1306 (11th Cir. 2006); *see also Simmons Foods, Inc. v. Indus. Risk Insurers*, 863 F.3d 792, 798 (8th Cir. 2017) ("If the [Alabama] Supreme Court or legislature wants to change state law, then they can do so—[this Court] cannot.").

Second, Plaintiff cites an opinion in which Magistrate Judge John England interprets an opinion from the Supreme Court of Alabama as abolishing absolute state immunity for sheriffs. *See McKenzie v. Cleveland*, No. 2:23-CV-00002-JHE, 2023 WL 3312539, at *6 (N.D. Ala. May 8, 2023) (citing *Ex parte Pinkard*, 373 So. 3d

192 (Ala. 2022)). As other courts have observed, however, *Pinkard* discusses immunity as applied to statutory officers, not constitutional officers. *See, e.g.*, *Reynolds v. Calhoun*, 650 F. Supp. 3d 1272, 1276 (M.D. Ala. 2023) (distinguishing *Pinkard*); *Hight v. Smith*, No. 6:21-CV-01307-LSC, 2022 WL 17178660, at *4 n.2 (N.D. Ala. Nov. 23, 2022) (concluding that "*Pinkard* overruled a recent series of cases that dealt with other types of state officials" but "did not purport to change the longstanding special status of sheriffs and their deputies"). This distinction between statutory and constitutional officers is critical to the analysis and application of state immunity. *See Ex parte Davis*, 930 So. 2d 497, 500 (Ala. 2005). The Supreme Court of Alabama has "consistently held that a claim for monetary damages made against a constitutional officer in the officer's individual capacity is barred by State immunity whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer's employment." *Id.* at 500–01. Accordingly, Defendants are immune from Plaintiff's state law claims. *Id.*

### B. Qualified immunity shields Sheriff Smith from one of Plaintiff's § 1983 claims (Count III).

Plaintiff asserts that Sheriff Smith, as chief policymaker and supervisor of Deputy Twilley, violated Hambric's constitutional rights by failing to train his deputies in dealing with mentally ill persons, and by allegedly maintaining a custom or policy of allowing deputies to mistreat mentally ill persons. Sheriff Smith contends

that Plaintiff's allegations fail to overcome qualified immunity's protections. Because Plaintiff fails to plead facts showing that Sheriff Smith was deliberately indifferent to a risk that his deputies would use excessive force on mentally ill persons, Sheriff Smith is entitled to qualified immunity.

Qualified immunity "allow[s] government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 733 (11th Cir. 2010) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)); *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").[3]

---

[3]     To receive immunity, the government official must first establish that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194 (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). But here, Plaintiff concedes that Sheriff Smith was acting within the scope of his discretionary authority. (Doc. 3 at 2.)

To overcome a qualified immunity defense, a plaintiff must meet two requirements. *Brown*, 608 F.3d at 734. First, the plaintiff's allegations, taken as true, must establish that the defendant violated a constitutional right. *Id.* Second, the violated right must have been "clearly established" when it was violated. *Id.* "[T]his two-pronged analysis may be done in whatever order is deemed most appropriate for the case." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 (2009)).

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated on other grounds by Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). "Instead, supervisory liability under § 1983 occurs … when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* (citing *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (alteration in original) (quoting *Gonzalez*, 325 F.3d at 1234). "[C]ulpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985)).

"A failure to adequately train [subordinates] constitutes an actionable policy or custom for § 1983 purposes 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [subordinates] come into contact.'" *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To establish deliberate indifference, a plaintiff must show (1) that the defendant had "subjective knowledge of a risk of serious harm," and (2) that the defendant disregarded that risk (3) "by conduct that is more than mere negligence." *Id.* at 1115 (citing *Cagle v. Sutherland*, 334 F.3d 980, 987 (11th Cir. 2003)). One way to meet this standard is by showing "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and [that] he fails to do so." *Cottone*, 326 F.3d at 1360 (quoting *Gonzalez*, 325 F.3d at 1234). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1048 (11th Cir. 2014) (quoting *Hartley*, 193 F.3d at 1269); *see Connick*, 563 U.S. at 62 ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)).

Plaintiff cites three instances allegedly involving the mistreatment of mentally ill persons to attempt to establish a causal connection between Sheriff Smith's actions as a supervisor and Hambric's allegedly violated right to freedom from excessive force. Plaintiff argues that these instances put Sheriff Smith on notice of the need to train his deputies in dealing with mentally ill persons, and that his failure to do so caused Deputy Twilley to violate Hambric's rights. Two of these instances involve corrections officers allegedly depriving inmates, one of whom died, of water and medical treatment while they suffered "acute episode[s] of mental illness." (Doc. 19 ¶¶ 36–37.) The third involves a deputy allegedly shooting an unarmed man in the heart while he was on the ground "suffering an acute episode of mental illness." (*Id.* ¶ 38.)

As a threshold issue, Sheriff Smith disputes whether these incidents could provide notice of any constitutional violations. He argues that the incidents variously (1) involve claims of constitutional violations that were dismissed by this Court; (2) involve ongoing litigation without a present determination of liability; (3) involve claims where the cause of death has not yet been determined; (4) involve claims alleging serious misconduct—e.g., that corrections officers locked the decedent in a freezer—that was later proved false; and (5) involve claims arising before he became Sheriff. Therefore, he argues, these incidents cannot be used to show a pattern of

unconstitutional violations providing him notice of a need for additional training. This Court agrees.

Incidents not involving definite violations cannot put Sheriff Smith on notice of a "pattern of similar constitutional violations." *Connick*, 563 U.S. at 62; *see Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (finding "no evidence that city officials were aware of past police misconduct" where the plaintiff "never demonstrated that past complaints of police misconduct had any merit"). And absent allegations showing that he was aware of the incident, Sheriff Smith cannot be presumed to have subjective knowledge of the incident that occurred before he became Sheriff. *See Cook*, 402 F.3d at 1115 (requiring "subjective knowledge" to establish deliberate indifference). Even if these incidents did involve constitutional violations of which Sheriff Smith was aware, they nevertheless fail to plausibly show that Sheriff Smith was deliberately indifferent to a risk that his deputies would use excessive force on mentally ill persons. Accordingly, he is entitled to qualified immunity. *See id.*

The two incidents that Plaintiff cites involving corrections officers allegedly depriving mentally ill inmates of water and medical treatment "could not have put [Sheriff Smith] on notice that specific training was necessary to avoid this constitutional violation" "[b]ecause those incidents are not similar to the violation at issue here." *Connick*, 563 U.S. at 63. Plaintiff alleges that Hambric died from

excessive force, not from a deprivation of water or medical treatment. *Cf. id.* at 62–63 (concluding that four prior *Brady* violations "could not have put [the defendant] on notice" that training was inadequate with respect to the factually distinct *Brady* violation at issue). Thus, Plaintiff's deliberate indifference claim rests upon, at most, a single prior incident involving similar allegations. One incident cannot satisfy Plaintiff's burden to show "a history of widespread abuse [that] puts [Sheriff Smith] on notice of the need to correct the alleged deprivation." *Cottone*, 326 F.3d at 1360; *Keith* 749 F.3d at 1048. "Without notice that a course of training is deficient in a particular respect, [Sheriff Smith] can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

Plaintiff's pleadings fail for another reason. Assuming Sheriff Smith had, as Plaintiff alleges, a policy of allowing deputies to mistreat mentally ill persons, the pleadings fail to show a causal connection between such a policy and Hambric's injury. *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397 (11th Cir. 1994) (holding that a supervisor is immune from § 1983 liability unless his failure to train amounts to deliberate indifference "and the failure has actually caused the injury of which the plaintiff complains" (citing *Canton*, 489 U.S. at 388)). Although Plaintiff alleges that Hambric "had a long and well-known history of mental illness," he does not allege

that Defendants were aware of Hambric's mental illness.  (Doc. 19 ¶ 13.) Nor does Plaintiff allege any facts showing that Hambric was displaying signs of mental illness when he was shot. Instead, Plaintiff alleges that Hambric was visibly unarmed, made no attempts to approach Deputy Twilley, and was shot in the back when he turned away. These allegations fail to establish that training in dealing with mentally ill persons would have or could have prevented Hambric's injury. *Cf. Cook*, 402 F.3d at 1117 ("[E]ven if [the plaintiff] had established the Sheriff's deliberate indifference toward suicidal inmates in general—and, on this record, precious little evidence points to such a conclusion—this would not suffice to demonstrate the foreseeability of [the decedent's] suicide and to hold the Sheriff liable under § 1983."). Accordingly, Plaintiff fails to establish the causal connection required to show a violation. *Belcher*, 30 F.3d at 1397.

Even if Plaintiff had sufficiently alleged a constitutional violation by Sheriff Smith, he makes no attempt to show that Sheriff Smith's alleged obligation to train his deputies in dealing with mentally ill persons was or is "clearly established." *Brown*, 608 F.3d at 734. Instead, Plaintiff appears to suggest that this case fits into that "narrow range of circumstances" where "the unconstitutional consequences of failing to train [are] so patently obvious that a [supervisor] could be liable under

§ 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 63–64. This Court disagrees.

In *Canton*, the Unites States Supreme Court left open the possibility that the consequences of failing to train could be so obvious that the failure to train could itself establish deliberate indifference. 489 U.S. at 390 n.10. The Court provided the example of a city arming its police officers with firearms and tasking them with arresting fleeing felons yet failing to train the officers on the constitutional use of deadly force. *Id.* Later, the Court distinguished the example in *Canton* from situations in which a subordinate is generally familiar with the applicable rules, but the plaintiff argues that more nuanced training is required. *See Connick*, 563 U.S. at 67 (prosecutors were familiar with *Brady* rules generally, but "were not trained about particular *Brady* evidence or the specific scenario related to the violation in [the plaintiff's] case"). Here, Plaintiff argues that Sheriff Smith must train his deputies in applying the general principles of the constitutional use of force specifically to mentally ill persons. "That sort of nuance simply cannot support an inference of deliberate indifference here." *Id.*

Because Plaintiff's allegations fail to show that Sheriff Smith violated clearly established law, he is entitled to qualified immunity. *Mitchell*, 472 U.S. at 525.

## IV.   CONCLUSION

For the reasons discussed above, Sheriff Smith's motion to dismiss is due to be **GRANTED** and Deputy Twilley's motion to dismiss is due to be **GRANTED**. The Court will enter an Order consistent with this Memorandum of Opinion.

DONE AND ORDERED ON JANUARY 25, 2024.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

215647